UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

   Plaintiff,

   v.

THOMAS TURNER,

   Defendant.

CASE NO. CR05-355C

ORDER

This matter comes before the Court on Defendant's Motion To Dismiss Counts 2, 5, 6, and 7 of the Indictment (Dkt. No. 54), the Government's Opposition (Dkt. No. 61), and Defendant's Reply (Dkt. No. 67). The Court, having considered the arguments of the parties and finding oral argument unnecessary,[1] hereby finds and rules as follows.

## I.   BACKGROUND

Defendant Thomas Turner is charged with seven counts of making affirmative false statements and omitting to provide material information to accountants of a securities issuing company. All of these counts are alleged violations of the same federal statutes and regulation: 15 U.S.C. § 78m(a), (b)(2); *id.* § 78ff; 17 C.F.R. § 240.13b2-2; and 18 U.S.C. § 2. (Indictment (Dkt. No. 1) 5–16.) These charges stem

---

[1] Defendant specifically noted his motion without oral argument.

ORDER – 1

from Defendant's involvement in negotiating investment and commercial loan transactions on behalf of Metropolitan Mortgage and Securities Company, Inc. ("Met") (of which he was an employee and executive officer) and Summit Securities, Inc. ("Summit") (of which he was president and a director) and the subsequent interactions that Defendant had with accountants tasked with preparing and auditing the companies' 2002 fiscal year financial statements to be filed with the Securities Exchange Commission ("SEC") in Form 10-K reports, which reflected those transactions. Defendant's Trial is set for May 29, 2007.

The Indictment describes one particular transaction. Simplified, this transaction involved a purchase of property from Met by someone who had obtained funding for the purchase via a loan from a Met subsidiary, meaning that the purchaser was not an independent third-party purchaser, as would be required to legally report an immediate profit. Nevertheless, Met recorded a $10 million profit for fiscal year 2002. Without the transaction at issue here, fiscal year 2002 would have seen a net loss. Met's and Summit's outside accountants specifically examined this transaction in their audit for the fiscal year, and the Government charges that due to Defendant's false and misleading misrepresentations and material omissions regarding the transaction, the accountants erroneously agreed that recording an immediate profit was proper. Upon further review in 2003 and, the Government charges, in spite of Defendant's continued false and misleading misrepresentations and material omissions throughout this process, the outside accountants withdrew their fiscal year 2002 audit opinion, internal accountants became involved in a joint investigation of the transaction, and Met's new CFO decided to reverse the $10 million profit that Met had recorded in 2002.

Specifically, Count 1 of the Indictment charges that "[i]n or about mid-September, 2002," Defendant

> made and caused to be made the following false statements and material omissions in telephone conversations with Met's outside accountants who at the time were located in their offices in Seattle:
> a.   that JP and DS constituted an independent, third party purchaser and that DS was very interested in purchasing the property, when in truth and in fact, as TURNER

ORDER – 2

    then well knew, representatives of T Corporation were negotiating JP's purchase of the properties, and JP's agent DS was participating in the transaction as a favor to the T Corporation, and had expressed that he did not want his cash down payment contribution at risk in the transaction;
    b. that Met's sale of properties to JP was independent of, and not connected with, Old Standard's loan to the T Corporation, when in truth and in fact, as TURNER then well knew, Old Standard's $17.6 million loan to the T Corporation was contingent, by oral agreement, on Met's sale of property to JP, and representatives of T Corporation were negotiating JP's purchase of the properties;
    c. that JP and DS were not connected to the T Corporation, had no other relationships and were independent parties acting on their own behalf and for their own accounts, when in truth and in fact, as TURNER then well knew, Old Standard's $17.6 million loan to the T Corporation was contingent, by oral agreement, on Met's sale of property to JP, representatives of T Corporation were negotiating JP's purchase of the properties, and DS, acting on behalf of JP, was participating in the transaction as a favor to the T Corporation, and had expressed that he did not want his cash down payment contribution at risk in the transaction.

(Indictment 5–6 (Count 1).) Count 2 charges that "[i]n or about late October and early November, 2002," Defendant made these exact same three false statements and material omissions "in meetings with Met's outside accountants at Met's offices in Spokane." (*Id.* at 6–7 (Count 2).) Counts 3 and 4 involve written statements not at issue on the instant motion. Count 5 charges that "[o]n or about September 24, 2003," Defendant made false statements and material omissions identical to (a) and (c) in Count 1 quoted *supra* "in meetings with Met's outside accountants at Met's offices in Spokane." (*Id.* at 11–12 (Count 5).) Count 6 charges that "[o]n or about October 2003," Defendant made false statements and material omissions identical to (a) and (c) in Count 1 quoted *supra* "in meetings with Met's outside accountants at Met's offices in Spokane." (*Id.* at 12–13 (Count 6).) Count 7 charges that "[o]n or about December 3, 2003," Defendant made false statements and material omissions identical to (a) and (c) in Count 1 quoted *supra* "in meetings with Met's outside accountants at Met's offices in Spokane." (*Id.* at 13–15 (Count 7).)

  Defendant moves to dismiss Counts 2, 5, 6, and 7 of the Indictment, arguing that they are multiplicitous of Count 1 because all of the foregoing counts charge false and misleading statements and material omissions concerning the "same gain treatment for the same real estate transaction, reflected in the same financial statement for the same corporation for the same fiscal year." (Defs.' Mot. 6.) The

ORDER – 3

1  Government counters that the charges involve different instances of affirmative representations and verbal
2  omissions in interactions with different accountants or groups of accountants involved on different dates.
3  Accordingly, the Government asserts that these multiple charges are proper.

**II.    ANALYSIS**

Multiple punishments for the same offense are prohibited by the Double Jeopardy Clause of the Fifth Amendment. There are two rules governing multiplicity. *Blockburger v. United States* governs the inquiry when "the same act or transaction constitutes a violation of two distinct statutory provisions," both of which may be charged only if "each provision requires proof of an additional fact which the other does not." 284 U.S. 299, 304 (1932). However, the instant case involves charges of multiple violations of the same statute. This latter inquiry is governed by an examination of "[w]hat Congress has made the allowable unit of prosecution." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952). "Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this congressional choice." *Sanabria v. United States*, 437 U.S. 54, 70 (1978). Where a statute is ambiguous as to the proper unit of prosecution, rendering Congress's intent unclear, the "ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83 (1955). Accordingly, "doubt will be resolved against turning a single transaction into multiple offenses." *Id.* at 84.

Determining the allowable unit of prosecution is a matter of statutory interpretation. The Court therefore begins with the language of the relevant statutes and rule. The Indictment's seven counts each allege violation of 15 U.S.C. § 78m(a), (b)(2); *id.* § 78ff; 17 C.F.R. § 240.13b2-2; and 18 U.S.C. § 2. Under § 78m, Congress has required "periodical and other reports" to be filed by issuers of securities such as Defendant's companies in accordance with rules and regulations that the SEC prescribes regarding the contents of such reports. 15 U.S.C. § 78m(a). This section also delegates authority to the SEC to prescribe the form of reports and internal accounting standards to facilitate, among other things, preparation of accurate financial statements. *Id.* § 78m(b). Under § 78ff, Congress has defined the

ORDER – 4

penalties for, *inter alia*, willful violations of Chapter 2B (Securities Exchanges) and any materially false or misleading statements made or caused to be made in any "application, report, or document required to be filed under this chapter or any rule or regulation thereunder." 15 U.S.C. § 78ff(a). The SEC rule Defendant is charged with violating further specifies prohibitions on conduct that may lead to such false or misleading statements. In particular, 17 C.F.R. § 240.13b2-2 ("Representations and conduct in connection with the preparation of required reports and documents") provides that:

> (a) No director or officer of an issuer shall, directly or indirectly:
>
>> (1) Make or cause to be made a materially false or misleading statement to an accountant in connection with; or
>>
>> (2) Omit to state, or cause another person to omit to state, any material fact necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with:
>>> (i) Any audit, review or examination of the financial statements of the issuer required to be made pursuant to this subpart; or
>>> (ii) The preparation or filing of any document or report required to be filed with the Commission pursuant to this subpart or otherwise.
>
> (b) (1) No officer or director of an issuer, or any other person acting under the direction thereof, shall directly or indirectly take any action to coerce, manipulate, mislead, or fraudulently influence any independent public or certified public accountant engaged in the performance of an audit or review of the financial statements of that issuer that are required to be filed with the Commission pursuant to this subpart or otherwise if that person knew or should have known that such action, if successful, could result in rendering the issuer's financial statements materially misleading.
>
> (2) For purposes of paragraphs (b)(1) and (c)(2) of this section, actions that, "if successful, could result in rendering the issuer's financial statements materially misleading" include, but are not limited to, actions taken at any time with respect to the professional engagement period to coerce, manipulate, mislead, or fraudulently influence an auditor:
>> (i) To issue or reissue a report on an issuer's financial statements that is not warranted in the circumstances (due to material violations of generally accepted accounting principles, generally accepted auditing standards, or other professional or regulatory standards);
>> (ii) Not to perform audit, review or other procedures required by generally accepted auditing standards or other professional standards;
>> (iii) Not to withdraw an issued report; or
>> (iv) Not to communicate matters to an issuer's audit committee.

ORDER – 5

17 C.F.R. § 240.13b2-2 (2003).[2] Finally, 18 U.S.C. § 2 defines prosecution of a "principal." Because the relevant federal statutes described here delegate authority to the SEC to promulgate rules that define prohibited conduct more specifically than the statutes, the relevant language for determining Congressional intent as to the "allowable unit of prosecution," comes from both § 78ff (the penalty statute) and Rule 13b2-2, as codified at 17 C.F.R. § 240.13b2-2 and quoted *supra*.

In *United States v. Vargas-Castillo*, 329 F.3d 715 (9th Cir. 2003), the Ninth Circuit discussed how to determine the appropriate unit of prosecution with respect to the plain language of several drug laws. The *Vargas-Castillo* court explained that when the word "any" is used to refer to the prohibited act or object, a statute is ambiguous as to the unit of prosecution. *Id.* at 721 (discussing prohibitions on possession of "any firearm" or "any narcotic drug," both of which, under the rule of lenity, may be charged as only one offense even if multiple firearms or multiple types of drugs are possessed). In *Vargas-Castillo*, however, the statute in question used the article "a," which the Ninth Circuit found to

---

[2] The material quoted here reflects the rule after it was amended in May of 2003. 68 Fed. Reg. 31,820 (May 28, 2003) (codified at 17 C.F.R. § 240.13b2-2). The amendment's effective date was June 27, 2003. *Id.* The prior version of the current Rule 13b2-2(a) provided that:

> no director or officer of an issuer, in connection with an audit or examination of the issuer's financial statements or the preparation of any document or report to be filed with the Commission, directly or indirectly shall (a) make or cause to be made a materially false or misleading statement to an accountant or (b) omit to state, or cause another person to omit to state, any material fact necessary to make statements made, in light of the circumstances under which such statements were made, not misleading to an accountant.

*Id.* at 31,820. Moreover, the foregoing was the entirety of Rule 13b2-2 prior to the amendment. Rules 13b2-2(b) and (c) were added as new rules in 2003. *Id.* The SEC explained the amendment as follows:

> In redesignating Rule 13b2-2 as Rule 13b2-2(a), technical changes have been made to clarify that the rule addresses false or misleading statements made "to an accountant in connection with" an audit, review or preparation of any document or report required to be filed with the Commission.

*Id.* While different versions of the rule may govern statements or omissions by Defendant in 2002 as compared with 2003 at trial, the Court finds that the amendment does not affect the analysis in this Order, because the Court's focus is on language common to both versions of Rule 13b2-2.

ORDER – 6

be in significant

> contrast to language in other statutes that have been interpreted to preclude prosecution for each object of the offense. Unlike "any," the article "a" cannot be said to fully encompass plural activity. Rather it encompasses singular, individualized activity and unambiguously defines the unit of prosecution in singular terms.

*Id.* at 721–22 (internal quotations and alterations omitted). The Court finds that § 78ff and 17 C.F.R. § 240.13b2-2 must be analyzed according to this standard.

As noted *supra*, § 78ff criminalizes willful violations of regulations promulgated under Chapter 2B as well as "any person who willfully and knowingly makes, or causes to be made, any statement in any application, report, or document required to be filed under this chapter or any rule or regulation thereunder . . . ." 15 U.S.C. § 78ff(a). While the word "any" is used in this section, it refers to statements made in applications, reports, or documents, rather than statements to accountants in the course of preparing such materials. There is no dispute that only one fiscal year's financial statement is involved here. Moreover, this section specifically criminalizes violations of relevant rules or regulations. Because 17 C.F.R. § 240.13b2-2 is the relevant rule or regulation in this case, and because it specifically addresses interactions with accountants while the statute does not, the Court finds that the proper focus of the "allowable unit of prosecution" inquiry is on SEC Rule 13b2-2 where, as here, a defendant is charged with omissions and misstatements *to accountants*.

As quoted *supra*, the essential terms of Rule 13b2-2(a)—and for purposes of pre-2003 conduct, the entirety of Rule 13b2-2—provide that no "director or officer of an issuer," shall "directly or indirectly" (1) "[m]ake or cause to be made *a* materially false or misleading statement to an accountant" or[3] (2) "[o]mit to state, or cause another person to omit to state, *any* material fact necessary [in order] to make statements made, in light of the circumstances under which such statements were made, not misleading" "in connection with" an "audit[, review] or examination of the [issuer's] financial statements"

---

[3] The use of "or" between these clauses in the rule makes clear that a defendant may be charged for false or misleading affirmative statements or material omissions or both. Thus, the rule contemplates instances of accurate statements tainted by material omissions.

ORDER – 7

or the "preparation [or filing] of any document or report [required] to be filed with the Commission." 17 C.F.R. § 240.13b2-2(a) (emphasis added) (brackets indicate differences in wording between the pre- and post-amendment versions of the rule). Applying *Vargas-Castillo* to this rule produces divergent results as to "materially false or misleading statements" and "omissions." The former is modified by "a," while the latter is modified by "any." Accordingly, there is no ambiguity as to the allowable unit of prosecution regarding false or misleading affirmative statements,[4] but there is ambiguity as to the allowable unit of prosecution regarding material omissions. The Court finds that Defendant may be separately charged for each false or misleading affirmative statement, regardless of when such statements occurred and regardless of how similar—dissimilar—to each other the statements were. However, the rule of lenity requires that Defendant be additionally charged no more than once for all material omissions bearing on statements made during the course of his interactions with the accountants during 2002 and 2003.

This interpretation allowing multiple charges for multiple false or misleading affirmative statements is not only mandated by the plain language of the statute, it is also consistent with the policy goals behind the rule. "As the Supreme Court has explained, '[c]orporate financial statements [including Form 10-Ks] are one of the primary sources of information available to guide the decisions of the investing public.'" *McGann v. Ernst & Young*, 102 F.3d 390, 397 (9th Cir. 1996) (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 810 & 811 n.5 (1984)) (alterations in original). Moreover, in revising the particular rule at issue here, the SEC noted that "[a] primary purpose for enactment of the Sarbanes–Oxley Act is the restoration of investor confidence in the integrity of financial reports, which will require the cooperation of all parties involved in the audit process." 68 Fed. Reg. 31,820, 31,822; *see also id.* at 31,823. The SEC correctly noted that the new rules, including the one at issue here,

---

[4] *Cf. United States v. Stringer*, No. CR03-432-HA, 2005 WL 1231183 (D. Or. May 20, 2005) (unpublished Opinion and Order finding that an indictment was not impermissibly multiplicitous when it charged multiple violations of (pre-amendment) 17 C.F.R. § 240.13b2-2 for multiple misstatements to accountants).

ORDER – 8

"implement a Congressional mandate." *Id.* at 31,287. It follows that each affirmative statement that could mislead accountants auditing in preparation for Form 10-K filings properly may incur a separate charge. Similarly, the lenity-driven result limiting prosecution to one collective of omissions, which are material because they would change the meaning of multiple statements to accountants, is consistent with the practical difficulty of parsing omissions for multiple prosecution. The Court is persuaded that Congress and the SEC meant to achieve the foregoing outcome by their linguistic choice to modify affirmative statements with "a," but omissions of material facts with "any," in proscribing conduct vis-a-vis accountants.

Rather than discussing *Vargas-Castillo* or analyzing the rule on its face, the parties' briefs primarily argue the applicability of Ninth Circuit holdings involving multiple charges under a single federal statute that prohibits false statements to government officials, 18 U.S.C. § 1001. In *United States v. Olsowy*, 836 F.2d 439, 443 (9th Cir. 1988), *cert. denied*, 485 U.S. 991 (1988), the Ninth Circuit held that a defendant who "made exactly the same oral denial to the same Secret Service agent twice and then signed a document embodying the very same denial" could not be convicted on more than one count of violating § 1001. The *Olsowy* court reasoned that the repetition of the initial false statement "did not further impair the operations of the government." *Id.* In *United States v. Salas-Camacho*, 859 F.2d 788, 791 (9th Cir. 1988), the Ninth Circuit refined the *Olsowy* holding into a "two-part test for determining whether multiplicitous counts for false statements are permissible." The first element is "whether a declarant was asked the same question and gave the same answer." *Id.* The second element is "whether later false statements further impaired the operations of the government." *Id.* In *Salas-Camacho*, the Ninth Circuit found that two convictions under § 1001 were proper, because, while the defendant made essentially the same false statement twice (satisfying the first element), these two statements were made to two separate customs officials, "each with distinct duties and functions." *Id.* Accordingly, the second statement "constituted an additional impairment" of the second customs official's "governmental functions." *Id.*

ORDER – 9

More recently, in *United States v. Stewart*, 420 F.3d 1007 (9th Cir. 2005), the Ninth Circuit applied both *Olsowy* and *Salas-Camacho*. In *Stewart*, the defendant twice denied having received a Social Security check in response to slightly different questions or statements by an FBI agent. *Id.* at 1013. He was convicted on two counts of making false statements in violation of § 1001. The Ninth Circuit found that the facts of *Stewart* were more like *Olsowy* than *Salas-Camacho*, holding that only one conviction for false statements could stand because the second statement, though slightly different from the first, did not additionally impair the FBI's investigation, which was ongoing. *Id.* at 1014.

Defendant argues that *Olsowy* governs his case, because Counts 1, 2, 5, 6, and 7 all involve functionally the same affirmative statements and verbal omissions to the same set of accountants. The Government emphasizes that *Olsowy* should not apply because (1) caselaw governing § 1001 should not govern the instant case, which is charged under different federal statutes and a regulation criminalizing not only false statements, but also misleading statements as well as material omissions, and (2) the questions and answers involved in this case were not sufficiently similar on the various occasions involved, nor made to identical (or functionally equivalent) individuals, to justify an analogy to *Olsowy*.

The foregoing analysis of the textual prohibitions at issue here under *Vargas-Castillo* lends perspective to whether the Court should apply *Olsowy*, *Salas-Camacho*, and *Stewart*, which interpreted the allowable unit of prosecution under 18 U.S.C. § 1001. Significantly, § 1001(a) defines the object of prosecution as "*any* materially false, fictitious, or fraudulent statement or representation." 18 U.S.C. § 1001(a)(2).[5] A straight application of *Vargas-Castillo* to § 1001 would suggest that multiple charges for false statements made in violation of this statute may not be brought. However, *Stewart*, 420 F.3d 1007, which was decided after *Vargas-Castillo* and which also cites *Vargas-Castillo*, indicates that the second element of the § 1001 multiplicity test (whether later statements "further impaired" government functions) is dispositive, allowing multiple charges even where the statutory use of "any" otherwise

---

[5] This statute also criminalizes, *inter alia*, "schemes" and uses of false documents, 18 U.S.C. § 1001(a)(1), (3), but *Olsowy*, *Salas-Camacho*, and *Stewart* all dealt with "statements."

ORDER – 10

would suggest that the rule of lenity should bar multiple charges. Thus, satisfying the two-part test in *Olsowy*, *Salas-Camacho*, and *Stewart* effects an *exception* to the rule of lenity generally applied to statutes that are ambiguous as to the allowable unit of prosecution because they use the modifier "any." Further, because *Olsowy*, *Salas-Camacho*, and *Stewart* did *not* involve an object of prosecution modified by "a," the test applied in those cases may be relevant to the instant case only insofar as the instant case involves charges where the object of prosecution is modified by "any," rather than "a." *Olsowy*, *Salas-Camacho*, and *Stewart* could at most influence the treatment of charges in this case for material omissions, but they cannot affect how false or misleading affirmative statements may be charged.

However, the Court declines to apply *Olsowy*, *Salas-Camacho*, and *Stewart* to omissions in the instant case because of (1) the significant difference between affirmative statements and omissions and (2) the divergent treatment that affirmative statements and omissions merit under *Vargas-Castillo* as presented in 17 C.F.R. § 240.13b2-2(a). The fact that *Vargas-Castillo* renders *Olsowy*, *Salas-Camacho*, and *Stewart* potentially applicable only to omissions in this case—when *Olsowy*, *Salas-Camacho*, and *Stewart* themselves involved only affirmative statements—presents an insurmountable barrier to using them to assess the charges at issue here. Assuming that the first element of the *Olsowy*, *Salas-Camacho*, and *Stewart* test—multiple instances of the same conduct—could be met as to omissions, the prospect of evaluating the second element—whether secondary or multiple material omissions "further impaired" the accountants' performance of a (quasi-)governmental function[6] in this case—defies common sense. Further, actually satisfying the second element by delineating between already nebulous omissions and matching them with disparate governmental functions for the purpose of allowing more than one charge for multiple instances of the "same" omission would require an extreme application of this exception to

---

[6] An obvious problem with applying *Olsowy*, *Salas-Camacho*, and *Stewart* directly to the instant case is that those three cases focus on a "*government* function" performed by a *government* officer or agent (*e.g.*, secret service, customs, FBI). Here, no government agent is involved. However, accountants can be said to be performing a government function when they act in their capacities as auditors preparing and reviewing federally mandated SEC filings.

ORDER – 11

the general multiplicity prohibition. Such a result would be incompatible with the overarching rule of lenity that must apply to objects of prosecution modified by "any." Moreover, Defendant's request to use *Olsowy*, *Salas-Camacho*, and *Stewart* to consolidate or dismiss charges is moot in light of the Court's ruling *supra* that multiple charges for omissions alone may not be brought to trial under *Vargas-Castillo* in any event.

Determining the practical effect of the Court's findings—that Defendant may be separately charged for each false or misleading affirmative statement to accountants, but that the rule of lenity requires that Defendant be additionally charged no more than once for all material omissions during the course of all of his interactions with the accountants in 2002 and 2003—requires focusing on the precise language of the Indictment. Counts 1, 2, 5, 6, and 7 each charge *both* false or misleading affirmative statements *and* verbal omissions. The form of the Indictment therefore will require a jury to find that *both* false or misleading affirmative statements *and* material omissions occurred on each relevant date corresponding with each count. Accordingly, because there are no separate counts for omissions only, and because the jury *must* find that false or misleading affirmative statements were made in order to convict on each count, the Indictment presents no multiplicity problem as to omissions. The result would be different if the language of the Indictment had used "or" rather than "and" to connect these two different objects of prosecution, which, as noted *supra* note 3, the rule clearly would allow. Such an alternate structure would allow a jury to convict on more than one count where it found material omissions in relation to accurate statements *but not* any false or misleading affirmative statements. Here, because the jury may not convict on *any* count in the Indictment (including Counts 3 and 4, which also link affirmative statements with material omissions by using "and") without finding that false or misleading affirmative statements were made, none of the counts must be dismissed.

//

ORDER – 12

## III. CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED.

SO ORDERED this 26th day of March, 2007.

John C. Coughenour

United States District Judge

ORDER – 13