UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

THOMAS TURNER,

    Defendant.

CASE NO. CR05-355C

ORDER

This matter comes before the Court on the Government's Motion for Reconsideration (Dkt. No. 75) of this Court's Order (Dkt. No. 74) on Defendant's Motion to Dismiss Counts 2, 5, 6, and 7 of the Indictment, Defendant's Opposition (Dkt. No. 78), and the Government's Reply (Dkt. No. 80). The Court, having considered the arguments of the parties and finding oral argument unnecessary, hereby finds and rules as follows.

## I.  BACKGROUND

The relevant facts and structure of the Indictment are discussed in this Court's March 26, 2007 Order (Dkt. No. 74), which is the subject of the instant motion. Defendant Thomas Turner has been charged with seven counts of making affirmative false statements and omitting to provide material information to accountants of a securities issuing company. Defendant previously moved to dismiss

ORDER – 1

Counts 2, 5, 6, and 7 of the Indictment, arguing that they were multiplicitous of Count 1. This Court conducted a multiplicity analysis of the relevant regulatory bases of the charges and found that Defendant may be separately charged for each false or misleading affirmative statement, regardless of when such statements occurred and regardless of how similar or dissimilar to each other the statements were. The Court found, however, that the rule of lenity requires that Defendant be additionally charged no more than once for all material omissions bearing on statements made during the course of his interactions with accountants during 2002 and 2003. (March 26, 2007 Order 8, 12.) The Court then applied the foregoing findings to the language of the Indictment in the instant case and found that there was no multiplicity problem as to omissions and none of the counts had to be dismissed because the conjunctive language used in the Indictment would require a jury to find that *both* false or misleading affirmative statements *and* material omissions occurred on each relevant date corresponding with each count. (*Id.* at 12.) The Court explained that a multiplicity problem would exist if the language of the Indictment had used "or" rather than "and" to connect these two different objects of prosecution, which the rule forming the basis for the charges would allow,[1] because such an alternate structure would permit a jury to convict on more than one count where it found material omissions in relation to accurate statements *but not* any false or misleading affirmative statements. (*Id.*)

The Government has not moved for reconsideration of the Court's multiplicity holding. Rather, the Government has asked the Court to reconsider the conclusion reached when applying the multiplicity

---

[1] The essential terms of Rule 13b2-2 provide that no "director or officer of an issuer," shall "directly or indirectly" (1) "[m]ake or cause to be made *a* materially false or misleading statement to an accountant" *or* (2) "[o]mit to state, or cause another person to omit to state, *any* material fact necessary [in order] to make statements made, in light of the circumstances under which such statements were made, not misleading" "in connection with" an "audit[, review] or examination of the [issuer's] financial statements" or the "preparation [or filing] of any document or report [required] to be filed with the Commission." 17 C.F.R. § 240.13b2-2(a) (emphasis added) (brackets indicate differences in wording between the pre- and post-amendment versions of the rule). The Court has already noted that the use of "or" between clause (1) and (2) in the rule makes clear that a defendant may be charged for false or misleading affirmative statements or material omissions or both. (March 26, 2007 Order 7 & n.3.)

ORDER – 2

analysis to the Indictment itself, arguing that it should not be required to prove both statements and omissions as to every count, that the jury should have the option of finding statements or omissions or both as to each count, and that any multiplicitous convictions (*i.e.*, multiple convictions for omissions only) can and should be cured only by dismissal before sentencing. Alternatively, if the Court denies the Government's motion for reconsideration, the Government intends to seek a superseding indictment from the Grand Jury, which process it has indicated is already underway. Defendant opposes reconsideration, arguing that the Government substantially prevailed on the underlying motion and that its objections to the Court's conclusion should not provide the Government a means to circumvent the Court's multiplicity holding.

## II. ANALYSIS

Motions for reconsideration are disfavored and ordinarily will be denied in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to the attention of the Court earlier with reasonable diligence. Local Rules W.D. Wash CrR 12(c)(11).

The Government's chief argument that this Court's conclusion—that the conjunctive language of the indictment requires the Government to prove its case conjunctively to avoid a multiplicitous result—constitutes "manifest error" rests on established Ninth Circuit precedent that when a crime is "denounced disjunctively in the statute it may be pled conjunctively in the indictment" and then presented to the jury disjunctively. *United States v. Urrutia*, 897 F.2d 430, 432 (9th Cir. 1990) (citing additional cases). "When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any of those acts conjunctively charged may establish guilt." *Id.* The Court has no quarrel with this general rule and acknowledges that this principle governs the interpretation of indictments, such that conjunctive language in an indictment should not ordinarily constrain jury instructions or proof of disjunctively defined crimes. However, the Court is unconvinced that the foregoing rule allowing disjunctive presentation to the jury despite a conjunctively worded

ORDER – 3

indictment requires turning a blind eye to a multiplicity issue that has already been identified as a matter of law in this particular case.

As an initial matter, the rule expressed in *Urrutia* focuses on the primary importance of jury instructions tracking statutory language instead of indictments. It is expressed in terms of possible objects of prosecution embodied by a single count in an indictment. In the instant case, such objects of prosecution are statements and omissions. Clearly the SEC rule at issue here allows one or both to be charged as a general matter. *See supra* note 1. The Court's prior Order did not find that the Government must always pursue both of those objects of prosecution in order to obtain any conviction pursuant to Rule 13b2-2. Rather, the issue before the Court was whether *multiple charges* for the same or similar conduct (*i.e.*, charging the same object of prosecution multiple times in separate Rule 13b2-2 counts) would violate the Double Jeopardy Clause. In this case, because the Indictment contains multiple charges for violating the same SEC rule, the pertinent question is whether the general rule expressed in *Urrutia*—that the jury is to be instructed on statutory language underlying each individual charge, not indictment language—should hold when its serial application to multiple charges would net impermissibly multiplicitous convictions. Notably, the Government cites no authority where the rule expressed in *Urrutia* is applied to allow the prosecution to proceed to trial on a multiplicitous indictment or to actively seek a potentially multiplicitous result.

For example, in *United States v. Booth*, 309 F.3d 566, 571–72 (9th Cir. 2002), on which the Government relies, the defendant argued that a disjunctive jury instruction following a conjunctively worded indictment on a disjunctively defined offense subjected him to potential conviction of two separate crimes rather than conviction by one of two means of committing a single crime. The Ninth Circuit rejected this argument, finding that the defendant was not charged with two separate crimes and that he faced no threat of double punishment. *Id.* at 572–73. The obvious similarity between *Booth* and the instant case is the disjunctively defined offense charged in a conjunctively worded indictment. Yet, whereas in *Booth* a potential double jeopardy problem within a single charge was rejected, in the instant

ORDER – 4

case this Court has identified a potential multiplicity problem among multiple charges if the jury is instructed disjunctively and allowed to convict on multiple "omissions only" counts. The *Booth* Court was not faced with this situation. Here, applying *Urrutia* as the Government suggests would mean that the jury could return a verdict (multiple omissions-only convictions) that this Court has already found would be multiplicitous. The next inquiry, therefore, is whether the Government's preferred solution permits ignoring this already-identified multiplicity potential.

The Government urges that this Court take direction from appellate cases finding multiplicitous convictions to be properly remedied by the trial court before or at sentencing or finding multiplicitous convictions to be harmless error because the same evidence would have been presented to the jury in any event. The Government emphasizes that the primary danger in Double Jeopardy Clause violations is that a defendant may receive "multiple punishments for the same offense." *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006). The Government suggests that this vice may be avoided entirely by dismissal of multiplicitous counts prior to sentencing. However, another danger is that a "multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes—not one." *United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991). This second concern is relevant to the Government's "same evidence" argument, to which the Court now turns.

In *United States v. Nash*, 115 F.3d 1431 (9th Cir. 1994), a defendant challenged three counts as multiplicitous on appeal following his conviction. The Ninth Circuit found that because the prosecution would have presented the same evidence regardless, the multiplicity error did not require a new trial. *Id.* at 1438. In *United States v. Matthews*, 240 F.3d 806, 817–18 (9th Cir. 2001), the Ninth Circuit applied *Nash* to another post-conviction appeal. In *Matthews*, the defendant had argued to the trial court that the multiplicitous charging instrument "had 'created a negative psychological effect' on the jury." *Id.* at 818. The trial court refused to dismiss allegedly multiplicitous counts before trial. However, it later dismissed multiplicitous counts after trial but before sentencing. On appeal, the Ninth Circuit determined that dismissal prior to sentencing was an adequate remedy to the multiplicitous indictment because a new trial

ORDER – 5

was not required under circumstances where the prosecution would have introduced exactly the same evidence either way. *Id.* Similarly, in *Langford*, an Eleventh Circuit case cited by both parties, a "same evidence" finding on appeal led the Court of Appeals to find that the defendant's conviction on a multiplicitous indictment was "harmless error." 946 F.2d at 805.

The Government argues that this Court should follow *Nash*, *Matthews*, and *Langford* and find that an adequate remedy here too will be dismissal of multiplicitous counts prior to sentencing. The Court disagrees. *Nash*, *Matthews*, and *Langford* were all post-conviction appeals in which the primary question before the Court of Appeals was how to *remedy* the *error* of multiplicitous convictions. In sharp contrast, no multiplicitous convictions have yet occurred in this case. The Court cannot find that the foregoing cases require this Court to commit an error just because it might be harmless or rendered so after the fact, thereby avoiding a need for a new trial. Where a possible multiplicity error can be avoided pre-trial, this Court finds that it ought to be, even if the Government would present the same evidence either way. The Court now turns to the Government's citation to pre-judgment authority.

A Second Circuit case upon which the Government relies—*Josephberg*—involved separate charges under two different statutes, which the defendant argued were multiplicitous because each did not require proof of an element that the other did not, under *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Josephberg*, 459 F.3d at 353–56. In *Josephberg*, the Second Circuit determined that the trial court erred in dismissing one of the potentially multiplicitous charges before trial because the trial court could later enter judgment on only one of the multiplicitous counts. *Id.* at 354–56. The Court finds that *Josephberg* differs from the instant case in two important respects.

First, the allegedly multiplicitous counts in *Josephberg* arose out of two different statutes. However, here, Defendant faces multiple counts for violations of the same SEC rule. As already noted by this Court (*see* March 26, 2007 Order 4), the multiplicity analyses for these two types of alleged double jeopardy violations differ. While the *Josephberg* case was governed by *Blockburger* because it involved two different statutes, the instant case involving multiple prosecutions under a single statute is governed

ORDER – 6

by the question of what Congress has made the allowable unit of prosecution. *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952). This Court has already determined that Congress and the SEC intended that under Rule 13b2-2, multiple false or misleading affirmative statements may be charged separately, but that material omissions may be charged only once. This is significant because the *Josephberg* holding depended on the principle that where "*two* statutory sections operate independently of one another, 'there is no bar to the Government's proceeding with prosecution simultaneously under the two statutes,'" despite Congressional intent and double jeopardy protections against multiple punishments. *Id.* at 355 (emphasis added) (quoting *Ball v. United States*, 470 U.S. 856, 860 (1985)). Allowing prosecutorial discretion in the context of multiple statutory schemes, conviction under any of which may be supported by the facts alleged, is far different from allowing the prosecution to seek convictions on multiple identical charges for violating the single SEC rule at issue here. Because only one statutory scheme necessarily is involved here, the quality of prosecutorial discretion found to be significant in *Josephberg* is absent here. Congress and the SEC did not intend multiple convictions for material omissions. Accordingly, multiple omissions prosecutions are improper. A second, related, distinction between *Josephberg* and the instant case is that in *Josephberg* the trial court dismissed a complete charge prior to trial and thereby eliminated a complete statutory basis for conviction. In contrast, this Court has not dismissed any counts nor eliminated any bases for conviction and has already held that Defendant may stand convicted of multiple instances of the same or similar false or misleading affirmative statements and that the Government may obtain conviction for the collective of material omissions. For the foregoing reasons, the Government's reliance on *Josephberg* is unavailing.

The Government also cites *United States v. Hayat*, 2006 WL 1686491 (E.D. Cal. 2006), an unreported case that quotes *United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999), for the proposition that "a court should usually defer ruling on a pre-trial multiplicity motion" and that such issues are "better sorted out post-trial." Notwithstanding the fact that the Government never made this argument when opposing on the merits Defendant's motion to dismiss multiplicitous counts, the Court

ORDER – 7

finds that this principle is limited to the facts of *Hubbell* and its citation is off point under the circumstances of the instant case. In *Hubbell*, a defendant was charged under 18 U.S.C. § 1001. Because *Olsowy*, *Salas-Camacho*, and *Stewart* (*see* March 26, 2007 Order 9–12 (discussing these cases and their inapplicability to the instant case in detail)) governed the necessary multiplicity analysis in *Hubbell*, the Court of Appeals found that there were "factual issues as to . . . whether the [defendant's] later acts or statements further impaired the operations of government." *Hubbell*, 177 F.3d at 14. Due to the fact-dependent nature of the relevant multiplicity analysis, the *Hubbell* Court found that any pre-trial determination of multiplicity would be "premature." *Id.* Here, however, the Court's multiplicity analysis was a legal determination that hinged on statutory construction. This Court's finding that multiple convictions for the same or similar omissions would be multiplicitous did not in any fashion depend on factual findings particular to the instant case that would necessitate factual development at trial prior to ruling on multiplicity. Accordingly, *Hubbell* is inapposite and the multiplicity holding in the instant case was not premature.

  In sum, unlike any of the relevant post-conviction appeal authority discussed *supra*, this Court is evaluating a "remedy" to a potential multiplicity error *prior* to trial and therefore prior to the materialization of that error. Simply because a post-trial remedy may render an eventual error harmless does not mandate this Court to proceed with the knowledge of a possible multiplicity error but nevertheless ignore it. Achieving a solution prior to trial—and avoiding error from the start—is preferable to putting off a remedy until later or waiting to see if the error will prove to be harmless. The Court is therefore wholly unconvinced by the Government's proposed pre-sentencing remedy. The Court finds equally unpersuasive the cases discussed *supra* developed at an interlocutory stage, because of the identified significant distinctions between them and the instant case. Moreover, under the circumstances, the Court finds that the Government's proposed alternative of seeking a superseding indictment that contains no danger of multiplicitous convictions is the ideal remedy because it will avoid a multiplicity error in the first instance. Accordingly, the Court DENIES the Government's motion for reconsideration.

ORDER – 8

Finally, because the Court has denied the Government's requested relief on independent grounds, the Court need not address Defendant's argument that the Government's motion seeks to constructively amend the Indictment in response to this Court's prior ruling.

### III. CONCLUSION

For the foregoing reasons, the Government's motion is DENIED.

SO ORDERED this 1st day of May, 2007.

*John C. Coughenour*
John C. Coughenour
United States District Judge

ORDER – 9